UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

| | | |
|---|---|---|
| DANIEL R. DALRYMPLE; and<br>LESLIE W. WHITE JR., | ) | Civ. 12-4029-KES |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| ROBERT DOOLEY, Warden,<br>Mike Durfee State Prison;<br>SCO JACKSON, Correctional Officer;<br>SGT. DYKSTRA, Correctional Officer;<br>SCO BENAC, Correctional Officer;<br>JENNIFER STANWICK,<br>Associate Warden;<br>LANE SCHRYVERS, Unit Manager;<br>SCO MAGORIAN,<br>Correctional Officer;<br>KIM LIPPENCOTT, Unit Coordinator;<br>NANCY CHRISTENSON,<br>Unit Manager;<br>TRAVIS TJEERDSMA,<br>Unit Coordinator;<br>JOSHUA KLIMEC, Case Manager;<br>TAMMY DOYLE, Unit Manager; and<br>SCO KAUTH, Correctional Officer, | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | ORDER GRANTING MOTION FOR<br>SUMMARY JUDGMENT |
| | ) | |
| Defendants. | ) | |

Plaintiffs, Daniel R. Dalrymple and Leslie W. White Jr., are inmates at

the Mike Durfee State Prison (MDSP) in Springfield, South Dakota. On

February 14, 2012, and again on February 17, 2012, plaintiffs jointly filed pro

se civil rights lawsuits pursuant to 42 U.S.C. § 1983, alleging harassment,

denial of access to the courts, retaliatory discipline, and violation of the due process clause of the Fourteenth Amendment. Docket 1.

The court consolidated plaintiffs' complaints and dismissed all claims except those for denial of access to the courts and retaliatory discipline. *See* Case No. Civ. 12-4025, Docket 9. The court also directed plaintiffs to file an amended complaint that included a prayer for relief. *Id.* Plaintiffs complied with this request and asked for punitive damages, expungement of each plaintiff's entire prison disciplinary record, and a written apology from each named defendant. Docket 29. Defendants answered, denied all claims against them, and asserted various affirmative defenses. Docket 61.

Defendants now move for summary judgment. Docket 120. Plaintiffs filed a "Statement of Material Facts Opposing Motion for Summary Judgment, which the court has considered. Docket 155. For the reasons set forth herein, the court grants defendants' motion for summary judgment.

## FACTUAL BACKGROUND

In the light most favorable to plaintiffs, the facts are as follows:

Plaintiffs have been the subjects of various disciplinary measures at MDSP–measures that plaintiffs contend were taken in retaliation for plaintiffs' conduct and to deny plaintiffs access to the courts. Docket 29. The first disciplinary measure in question occurred on December 10, 2011, when Officer Brian Benac allegedly observed Dalrymple kneeling in front of White,

who was standing in front of an open locker door with his pants down. Docket 121 (Benac Aff. ¶ 4); Docket 120-12 at 1; Docket 120-13 at 1. Because Rule 4-3 of the South Dakota Department of Corrections (SDDOC) Inmate Living Guide prohibits inmates from "engaging in consensual sexual contact or sexual harassment with any person," Officer Benac wrote and submitted disciplinary reports for each plaintiff.[1] Docket 120-3 at 2; Docket 121 at ¶ 4; Docket 120-12 at 1; Docket 120-13 at 1. Upon receiving notice of the disciplinary report, Dalrymple denied the allegation and explained that he "was looking for an adaptor in [his] keyboard bag." Docket 120-12 at 1. Additionally, Dalrymple insisted that White's pants were not down. *Id.*

The reports were then referred to a disciplinary hearing before Sergeant Dykstra. Docket 120-12 at 2; Docket 120-13 at 3. Although plaintiffs denied the allegations, Sergeant Dykstra relied on Officer Benac's report and sanctioned each plaintiff to ten days in disciplinary segregation.[2] Docket 120-12 at 2; Docket 120-13 at 3. Despite White's concession that there was a basis

---

[1] Officer Benac prepared substantively identical reports for each plaintiff. *See* Docket 120-12 at 1; Docket 120-13 at 1.

[2] Each plaintiff was given credit for time served in administrative detention prior to the disciplinary hearing. Docket 120-12 at 2; Docket 120-13 at 3. Consequently, Dalrymple was released from disciplinary segregation on the day of his hearing, and White served an additional six days in disciplinary segregation (five of which were for a rule violation on December 12, 2011). Docket 120-12 at 2; Docket 120-13 at 3; Docket 120-4 at 1. Plaintiffs now contend that each of them was actually sanctioned to fifteen days in disciplinary segregation for their Rule 4-3 violations. Docket 155 at ¶¶ 30–31.

for the complaint–he and Dalrymple were seen in the craft room and Dalrymple was on his knees in front of White–both plaintiffs maintain that no sexual act took place.[3] Docket 29 at 6; Docket 133-1 (White Dep. 21:5–13, Aug. 1, 2012); Docket 155 at ¶ 28.

White received another disciplinary write-up on December 12, 2012, while in disciplinary segregation. Docket 120-4 at 1. More specifically, Officer Zach Jackson reported that he had seen White "fishing with material from a sheet to another inmate." *Id.* On December 15, 2012, White admitted to committing the prohibited act and waived his right to appeal the matter. *Id.* at 2. Nonetheless, White now alleges that Officer Jackson prepared the disciplinary report because White had gotten into a disagreement with Officer Jackson two hours earlier. Docket 29 at 9. Furthermore, White alleges that Officer Jackson coerced White's admission of guilt on December 15, 2012. Docket 155 at ¶ 35.

After being released from disciplinary segregation, White was "forced to move from the B-2 pod into the B-1 pod of the barracks." Docket 29 at 10. White alleges that this "forced move" was in retaliation for the grievances he had previously filed with respect to the inaccurate reports of Officers Benac

---

[3] After being released from disciplinary segregation, each plaintiff filed an "informal resolution request" and a "request for administrative remedy" to address what they claim were false accusations of Rule 4-3 violations. Docket 90. All requests were reviewed and subsequently denied. *Id.*

and Jackson. *Id.* About one month later, on February 8, 2012, White was forced to move again. Docket 10 at 1; Docket 29 at 15. Because this move came just two days after Associate Warden Jennifer Stanwick had a "negative discussion" with White regarding the number of grievances White had been filing, White alleges that the move constitutes a retaliatory transfer. Docket 10 at 1; Docket 11; Docket 29 at 15.

Also on February 8, 2012, Dalrymple and White received write-ups for violating Rules 3-15 and 3-21, respectively. Docket 29 at 15–16. More specifically, Dalrymple was found in possession of a legal document bearing White's name and was thus written up for a Rule 3-15 violation, which prohibits inmates from possessing "any article" belonging to another inmate. *Id.*; Docket 120-3 at 4; Docket 120-7; Docket 120-8. Nonetheless, Dalrymple contends that the write-up and subsequent loss of privileges amount to retaliatory discipline. Docket 29 at 16. White, on the other hand, was written up for a Rule 3-21 violation, which prohibits the transfer of property to another inmate. Docket 29 at 15; Docket 120-3 at 5. White asserts that the write-up constitutes retaliatory discipline. Docket 29 at 15–16.

The next disciplinary measure at issue occurred on February 17, 2012. Docket 10, 15. Both plaintiffs allege that they requested passes to the prison's law library, but were denied access. *Id.*; Docket 29 at 19. Although plaintiffs admit they were given some access to the law library, they contend that

defendants' denial of access on "all available days" amounts to a denial of access to the courts. Docket 29 at 19. More specifically, plaintiffs assert that they were wrongfully denied additional access to the law library to prepare time-sensitive court documents. *Id.*

White also alleges that he received two "false" write-ups for a Rule 3-13 violation, which prohibits inmates from "[b]eing in a housing unit other than [their] own, or entering living quarters other than [their] own, or being on the wrong floor or tier of [their] housing area." Docket 29 at 10–12; Docket 120-3 at 4. White does not specify when he received these write-ups, nor does he specify where he actually was when the alleged violations occurred. *Id.* Rather, White appears to allege that he was not "out of area" when he received notice of the violations.[4] *Id.* Hearings were held in both instances, and a disciplinary hearing officer found White guilty of violating Rule 3-13 on both occasions. *Id.* White believes these unfounded write-ups amount to retaliatory discipline, but White does not specify a purported reason for the alleged retaliation. Docket 29 at 12–12.

---

[4] White represents that he received notice of his first "out-of-area" write-up while he was at lunch, and notice of the second "out-of-area" write-up while he was sleeping. Docket 29 at 10–12. In his reply to defendants' motion for summary judgment, however, he appears to assert that he received an "out of area" write-up because he was at lunch, and another because he was sleeping either when he was supposed to be in another area or during bunk inspections. Docket 155 at ¶¶ 38–39.

Again, without specifying dates, White generally alleges that Officer Jackson and Unit Coordinator Travis Tjeerdsma disciplined him because he had requested and filed two grievance forms. Docket 29 at 13–14. "One grievance form was filed on CO Jackson for more harassing write-ups, and the second grievance form was filed on Unit Coordinator Travis Tjeerdsma for allowing Jackson to harass [White] verbally as well as with write-ups." Docket 29 at 14. "Just two hours after [White] handed the grievance forms over to Mr. Tjeerdsma, [White saw] Mr. Tjeerdsma in the pod with CO Jackson." *Id.* "Shortly after the two staff members finished talking, [White] was called to the pod and placed in cuffs and taken to the SHU on a write-up written by Travis Tjeerdsma." *Id.* Although White represents that he received a major write-up from Tjeerdsma and minor write-ups from Officer Jackson, White does not explain the allegations contained in the retaliatory write-ups at issue. *Id.*

Finally, plaintiffs allege that they were denied grievance forms in retaliation for the number of grievances each of them had previously filed. Docket 29 at 19–20.[5]

---

[5] In their amended complaint, plaintiffs characterized this claim as one arising under the First Amendment and the Equal Protection Clause of the Fourteenth Amendment. The claim more properly appears to be a retaliatory discipline claim, and the court will construe it as such.

"Summary judgment is appropriate when the evidence,[6] viewed in a light most favorable to the non-moving party, demonstrates that there is no genuine issue of material fact, and that the moving party is entitled to judgment as a matter of law." *Clark v. Kellogg, Co.*, 205 F.3d 1079, 1082 (8th Cir. 2000); *see also* Fed. R. Civ. P. 56(a). "Once the motion for summary judgment is made and supported, it places an affirmative burden on the non-moving party to go beyond the pleadings and by affidavit or otherwise designate specific facts showing that there is a genuine issue for trial." *Commercial Union Ins. Co. v. Schmidt*, 967 F.2d 270, 271 (8th Cir. 1992) (internal quotations and citations omitted). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Although "the court is required to . . . give [the nonmoving] party the benefit of all reasonable inferences to be drawn from the underlying facts," *Vette Co. v. Aetna Cas. & Sur. Co.*, 612 F.2d 1076, 1077 (8th Cir. 1980), the nonmoving party may not "rest upon mere denials or allegations." *Forrest v. Kraft Foods, Inc.*, 285 F.3d 688, 691 (8th Cir. 2002). Instead, the nonmoving party must "set forth specific facts sufficient to raise a genuine issue for trial." *Id.*

---

[6] The evidence includes the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits. Fed. R. Civ. P. 56(c).

Prisoners who proceed pro se are entitled to the benefit of liberal construction at the pleading stage. *Quam v. Minnehaha Cnty. Jail*, 821 F.2d 522, 522 (8th Cir. 1987). Nonetheless, the summary judgment standard set forth in Rule 56 of the Federal Rules of Civil Procedure remains applicable to prisoners proceeding pro se. *Id.* The district court is not required to "plumb the record in order to find a genuine issue of material fact." *Barge v. Anheuser Busch, Inc.*, 87 F.3d 256, 260 (8th Cir. 1996). Moreover, the court is not "required to speculate on which portion of the record the nonmoving party relies, nor is it obligated to wade through and search the entire record for some specific facts that might support the nonmoving party's claim." *Id.* Courts must remain sensitive, however, "to the special problems faced by prisoners attempting to proceed pro se in vindicating their constitutional rights, and [the Eighth Circuit does] not approve summary dismissal of such pro se claims without regard for these special problems." *Nickens v. White*, 622 F.2d 967, 971 (8th Cir. 1980).

## DISCUSSION

Defendants assert that plaintiffs' remaining retaliatory discipline claims fail as a matter of law because plaintiffs cannot demonstrate that they were disciplined for exercising a constitutional right. Docket 134. Defendants further assert that they did not deny plaintiffs access to the courts. *Id.* Lastly, defendants argue that each of them is entitled to immunity from any suit for

money damages. *Id.* Plaintiffs object to defendants' assertion that they neither engaged in retaliatory discipline nor denied plaintiffs access to the courts. Docket 155. The court will address defendants' arguments in reverse order.

## I. Plaintiffs' Claim for Punitive Damages Is Barred by the Eleventh Amendment and the Limitations of § 1983.

Plaintiffs do not specify the capacity in which they are suing defendants. As a result, the court interprets their action as including only official capacity claims. *See Murphy v. Arkansas*, 127 F.3d 750, 754 (8th Cir. 1997) ("[A]bsent a clear statement that officials are being sued in their personal capacities, 'we interpret the complaint as including only official-capacity claims.'" (quoting *Egerdahl v. Hibbing Comm. Coll.*, 72 F.3d 615, 619 (8th Cir. 1995))).[7] Because a claim against a state actor in his official capacity is in reality a complaint against the state, it is barred by the Eleventh Amendment. *See Denke v. S.D. Dep't of Soc. Services*, 829 F.2d 688, 689 (8th Cir. 1987) ("[I]t remains true that if a responsible officer is not joined in an individual capacity, a suit brought solely against the state or one of its agencies is generally barred by the eleventh amendment." (citation omitted)).

---

[7] As previously indicated, although pro se petitioners are often granted some measure of leniency in their pleadings, they still must comply with the Federal Rules of Civil Procedure. Pursuant to Rule 9(a)(1) of the Federal Rules of Civil Procedure, "a pleading need not allege a party's capacity to sue or be sued . . . [e]xcept when required to show that the court has jurisdiction." In accordance with the Eleventh Amendment, a civil rights action against state employees is one such situation. *Rose v. Nebraska*, 748 F.2d 1258, 1262 (8th Cir. 1984).

Furthermore, the United States Supreme Court has explicitly held that "neither a State nor its officials acting in their official capacities are 'persons' under § 1983." *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989). Therefore, neither a State nor its officials acting in their official capacities can be sued for money damages under § 1983. Therefore, insofar as plaintiffs request relief in the form of money damages from defendants, defendants are entitled to summary judgment. Still, because "[s]tate officials acting in their official capacities are § 1983 'persons' when sued for prospective relief, and [because] the Eleventh Amendment does not bar such relief," *Murphy*, 127 F.3d at 754, the court will proceed with its assessment of plaintiffs' access to courts and retaliatory discipline claims.

## II.     Defendants Are Entitled to Summary Judgment on Plaintiffs' Access to Courts Claim.

Defendants assert that limiting the days on which plaintiffs could access the law library does not constitute a denial of access to the courts. Docket 134 at 14–16. Defendants represent that plaintiffs were given access to the law library in accordance with prison policy–two days per week, plus one extra day per week if time was of the essence. *Id.* at 15 (citing Docket 122 (Christensen Aff. ¶ 4); Docket 129 (Lippencott Aff. ¶ 4); Docket 132 (Tjeerdsma Aff. ¶ 11); Docket 120-2. In their response to defendants' motion for summary judgment, plaintiffs do not contest the law library policy as set forth by defendants. Docket 155 at ¶ 55. Nonetheless, plaintiffs maintain that, "on a number of

documented occasions unit staff . . . denied passes to Dalrymple and White."
*Id.*

It is well established "that prisoners have a constitutional right of access to the courts." *Bounds v. Smith*, 430 U.S. 817, 821 (1977). To ensure that the fundamental right of access to the courts is upheld, the United States Supreme Court has explicitly required that "prison authorities . . . assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law." *Bounds*, 430 U.S. at 828. To prevail on an access to courts claim, a prisoner must establish that he has sustained "an actual injury" as a result of the prison's inadequate library facilities or legal assistance program. *Moore v. Plaster*, 266 F.3d 928, 933 (8th Cir. 2001) (citing *Klinger v. Dep't of Corr.*, 107 F.3d 609, 617 (8th Cir. 1997)). To demonstrate "actual injury," the prisoner must show " 'that a nonfrivolous legal claim had been frustrated or was being impeded.' " *Id.* (quoting *Johnson v. Missouri*, 142 F.3d 1087, 1089 (8th Cir. 1998)).

In the instant case, plaintiffs do not assert that the prison's legal resources are inadequate. Rather, plaintiffs assert that they are being denied adequate access to the prison's legal resources because they are not allowed to access the law library on all available days. Defendants have provided evidence to establish that "[i]nmates are allowed to use the law library twice a

week[,] and if they are able to show that they need to meet a deadline, they are given a pass to utilize the library a third time in the week." Docket 134 at 15 (citing Docket 122 (Christensen Aff. ¶ 4)); Docket 129 (Lippencott Aff. ¶ 4); Docket 132 (Tjeerdsma Aff. ¶ 11); Docket 120-2. During their depositions, each plaintiff admitted that he was given access to the prison's law library twice a week.[8] Docket 133-1 (White Dep. 47:17–23); Docket 133-2 (Dalrymple Dep. 18:23–19:7, Aug. 1, 2012). It therefore appears that plaintiffs were given adequate access to the law library. *See Entzi v. Redmann*, 485 F.3d 998, 1005 (8th Cir. 2007) ("[T]here is . . . no freestanding constitutional right to a particular number of hours in the prison law library." (citing *Lewis v. Casey*, 518 U.S. 343, 351 (1996); *Walker v. Mintzes*, 771 F.2d 920, 932 (6th Cir. 1985))).

---

[8] Plaintiffs filed declarations on April 9, 2012, alleging that they had been denied access to the law library on Friday, February 17, 2012. Docket 10, 15. In Dalrymple's declaration, he asserts that he was denied access in accordance with a policy of which he was unaware. Docket 10. The policy, however, had been posted outside the law library. Christensen Aff. ¶ 5; Docket 120-2. Furthermore, White received a letter on February 2, 2012, from DOC Administration specifically informing him of the law library policy:

> Each unit has a time scheduled to go to the law library each week. Units are scheduled separately to minimize inmate separation issues. If you require additional time because of a time-sensitive legal issue you may be working on, you may work with your unit staff to gain more time in the law library.

Docket 67-4.

Even more significant than the lack of evidence suggesting that plaintiffs have been denied access to the courts is the fact that plaintiffs have failed to assert that they suffered any actual injury as a result of their inability to use the prison's law library on all available days. To the contrary, it appears from Dalrymple's testimony and the various filings in this case that plaintiffs have had sufficient access to the courts. Dalrymple Dep. 19:15–25. Because the court cannot otherwise presume that the allegedly inadequate access to legal resources has barred plaintiffs from accessing the courts, defendants are entitled to summary judgment as a matter of law. *See Bandy-Bey v. Crist*, 578 F.3d 763, 765 (8th Cir. 2009) (affirming the district court's dismissal of an access-to-courts claim because plaintiff "did not demonstrate that defendants' failure to grant him the library time he requested 'resulted in an actual injury, that is, the hindrance of a nonfrivolous and arguably meritorious underlying legal claim.' " (citations omitted)).

### III.   Defendants Are Entitled to Summary Judgment on Plaintiffs' Retaliatory Discipline Claims.

Defendants assert that they have not retaliated against plaintiffs in the carrying out of various disciplinary measures. Rather, defendants claim that the disciplinary measures taken against plaintiffs were the direct consequences of various rule violations committed by plaintiffs. Docket 134 at 5–14, 16–18. In their response to defendants' motion for summary judgment,

plaintiffs contest only a portion of defendants' retaliatory discipline arguments. Docket 155 at 5–10, 13–14.

"A prisoner's Eighth Amendment rights are violated if prison officials 'impose a disciplinary sanction [or otherwise take adverse action] against a prisoner in retaliation for the prisoner's exercise of his constitutional right.' " *Meuir v. Greene Cnty. Jail Employees*, 487 F.3d 1115, 1119 (8th Cir. 2007) (quoting *Goff v. Burton*, 7 F.3d 734, 738 (8th Cir. 1993)). To establish a prima facie case of retaliatory discipline, a plaintiff must show that "(1) the prisoner exercised a constitutionally protected right; (2) prison officials disciplined the prisoner; and (3) exercising the right was the motivation for the discipline." *Haynes v. Stephenson*, 588 F.3d 1152, 1155 (8th Cir. 2009). "The plaintiff-inmate has a heavy evidentiary burden," *Meuir*, 487 F.3d at 1119 (citing *Murphy v. Mo. Dep't of Corr.*, 769 F.2d 502, 503 n.1 (8th Cir. 1985)), and "[m]erely alleging that an act was retaliatory is insufficient." *Id.* (citing *Benson v. Cady*, 761 F.2d 335, 342 (7th Cir. 1985)).

Significantly, "if the alleged retaliatory conduct violations were issued for the actual violation of a prison rule," a plaintiff's retaliation claim fails. *Hartsfield v. Nichols*, 511 F.3d 826, 829 (8th Cir. 2008); *see also Haynes*, 588 at 1156 (8th Cir. 2009) ("To establish the third element of the prima facie case for retaliatory discipline, that exercising the protected right motivated the discipline, an inmate must show that but for a retaliatory motive the prison

official would not have filed the disciplinary report."). "Thus, a defendant may successfully defend a retaliatory discipline claim by showing 'some evidence' the inmate actually committed a rule violation."[9] *Hartsfield*, 511 F.3d at 829 (citing *Goff*, 7 F.3d at 738–39).

Plaintiffs have asserted several retaliatory discipline claims, many of which rest on similar facts. The court will address each of the claims in the order[10] they appear in the factual background.

### A. Dalrymple and White have not demonstrated that defendants retaliated against them by issuing a major write-up for engaging in prohibited sexual contact.

Dalrymple and White allege that Officer Benac prepared and submitted false reports that resulted in a major disciplinary write-up and subsequent sanctions for each of the plaintiffs. Docket 29 at 6–7. The report stated as follows: "On the above date and time[11] I observed inmates Dalrymple . . . and inmate [White] . . . in the craft room. When I entered the room inmate [White]

---

[9] The United States Supreme Court has stated that "[p]rison administrators . . . should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security." *Bell v. Wolfish*, 441 U.S. 520, 547 (1979) (citations omitted).

[10] Because plaintiffs did not provide specific dates for some of their claims, the chronology set forth in the background portion of this order may not be accurate.

[11] The incident occurred on December 10, 2011, at 4:58 p.m. The report was prepared at 5:48 p.m. that same day.

pulled up his pants while Dalrymple was kneeling down facing him behind the locker door." Docket 120-12 at 1; Docket 120-13 at 1. When notified of the write-ups, both plaintiffs denied having committed the alleged act. Docket 120-12 at 1; Docket 120-13 at 1. Consequently, the matter was referred to a disciplinary hearing for further consideration. Docket 120-12 at 1; Docket 120-13 at 1.

On December 19, 2011, Sergeant Dykstra held a disciplinary hearing for White. Docket 120-13 at 3. At the hearing, White admitted that he and Dalrymple were found in the position that Officer Benac described, but denied that he and Dalrymple were engaged in the conduct Officer Benac had alleged. *Id.* Based on White's testimony and the report from Officer Benac,[12] Sergeant Dykstra found White guilty of committing a prohibited act under Rule 4-3 and sanctioned him to ten days[13] in disciplinary segregation. *Id.* The following day, Sergeant Dykstra held a separate disciplinary hearing for Dalrymple. Docket 120-12 at 2. Although Dalrymple claimed he was situated three feet from

---

[12] Plaintiffs argue that the disciplinary officer should have reviewed the craft room videotape to determine whether plaintiffs were actually engaged in a consensual sexual act. But Sergeant Dykstra insists that "[t]here was no videotape available to review." Docket 125 (Dykstra Aff. ¶ 8).

[13] Plaintiffs contend that each of them were actually sanctioned to fifteen days in disciplinary segregation. Docket 155 at 30–31. This dispute, however, does not affect the outcome of the case, and thus will not preclude the entry of summary judgment. *See Anderson*, 477 U.S. at 248 ("Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.").

White and was merely squatting down to look for an adaptor," Sergeant Dykstra relied on Officer Benac's report and sanctioned Dalrymple to ten days in disciplinary segregation. *Id.* Significantly, while serving his time in disciplinary segregation, "Dalrymple sent kites to the Warden and other staff admitting that he and Inmate White did engage in the alleged inappropriate conduct." Docket 132 (Tjeerdsma Aff. ¶ 5).

In their response to defendants' motion for summary judgment, plaintiffs maintain that Officer Benac falsified the disciplinary reports that resulted in each plaintiff's disciplinary report. Docket 155 at ¶¶ 27–31. Plaintiffs also assert that Sergeant Dykstra considered only the report of Officer Benac in arriving at his determination of guilt, and he relied on an incomplete investigation that should have included a review of the craft room video recording. *Id.* at ¶¶ 30–31. Plaintiffs did not object, however, to the representation that Dalrymple sent kites to the Warden in which he admitted that he and White had engaged in consensual sexual contact.

With respect to the required elements of a retaliatory discipline claim, the court finds that plaintiffs have failed to establish the first and third elements of such a claim. First, neither Dalrymple nor White assert that they were exercising a constitutionally protected right prior to receiving the punishment in question. Docket 29 at 6–7. Second, neither plaintiff has established that their exercise of a constitutionally protected right was the

motivation for the punishment. *Id.*; *see Sprouse v. Babcock*, 870 F.2d 450, 452 (8th Cir. 1989) (holding that an inmate's claim, if based solely on the falsity of a prison official's charges, does not state a constitutional claim unless coupled with an allegation that a false charge was issued in retaliation for the inmate's participation in a constitutionally protected activity).

Defendants, on the other hand, have provided "some evidence"–a first-hand account by Officer Benac of the conduct observed and evidence that Dalrymple admitted to having engaged in the prohibited conduct–to demonstrate that the disciplinary measures in question were taken against Dalrymple and White for their involvement in a major rule violation, namely the rule prohibiting consensual sexual contact. *See Hartsfield*, 511 F.3d at 826 (noting that a disciplinary report which is based on personal knowledge and "detail[s] the conduct underlying the charges" qualifies as "some evidence"); *Orebaugh v. Caspari,* 910 F.2d 526 (8th Cir. 1990) (plaintiff's admission to committing the offensive conduct was "some evidence" of an actual rule violation). Furthermore, defendants have provided evidence that disciplinary hearings were held on the matter, and after considering evidence and testimony from all parties,[14] Sergeant Dykstra found plaintiffs guilty of Rule 4-3 violations. *See Bandy-Bey*, 578 F.3d at 766 (" '[A] report from a

---

[14] In their response to defendants' motion for summary judgment, plaintiffs indicate that they were given the opportunity to testify at the disciplinary hearing. Docket 155 at ¶¶ 30–31.

correctional officer, even if disputed by the inmate and supported by no other evidence, legally suffices as 'some evidence' upon which to base a prison disciplinary violation, if the violation is found by an impartial decisionmaker.' " (quoting *Hartsfield*, 511 F.3d at 831)). Because a retaliation claim fails if defendants produce "some evidence" that plaintiffs actually violated prison rules, defendants are entitled to summary judgment on these claims.

### B. White has not demonstrated that defendants retaliated against him when they disciplined him for "fishing" into another cell.

White alleges that on December 12, 2012, while in disciplinary segregation, he received an unfounded write-up from Officer Jackson wherein Officer Jackson accused White of "fishing[15] with material from a sheet to another inmate." Docket 120-4 at 1. Despite having pleaded guilty to a Rule 4-35 violation[16] (Docket 120-4 at 2), White now asserts that the accusation and corresponding punishment constitute retaliatory discipline because the accusation came just two hours after White had a disagreement with Officer Jackson regarding the availability of reading materials. Docket 29 at 9.

---

[15] Fishing is "the process of inappropriately passing items from cell-to-cell, most often accomplished by using lengths of string/material, an anchor, etc." Docket 126 (Jackson Aff. ¶ 4).

[16] Rule 4-35 prohibits "[c]onduct which disrupts or interferes with the security or good order of the institution or interfering [sic] with a staff member in the performance of his/her duties including circumventing or attempting to circumvent any rule, regulation or procedure contained in DOC policies or institutional operational memorandums." Docket 120-3 at 3.

Additionally, White claims that Officer Jackson coerced him into pleading guilty. Docket 155 at ¶ 35.

The court finds that White has failed to establish the first and third elements of a retaliatory discipline claim. First, White has not shown that he was engaged in a constitutionally protected activity. Rather, White merely alleges that he had a disagreement with Officer Jackson. Furthermore, White has not demonstrated that his exercise of a constitutionally protected right was the motivation for the disciplinary measure in question. On the other hand, defendants have provided "some evidence" to establish that White was disciplined for an actual rule violation. More specifically, defendants have provided evidence to show that Officer Jackson observed White commit a Rule 4-35 violation (Docket 126 (Jackson Aff. ¶¶ 4–5)), and that White pleaded guilty to such conduct (Docket 120-4 at 2). Although White now claims that his plea was coerced by Officer Jackson, he has offered no evidence to support this allegation.[17] Docket 155 at ¶ 35. It is clear, therefore, that White was disciplined, at least in significant part, for the actual violation of a prison rule. *See Hartsfield*, 511 F.3d at 829 (stating that "if the alleged retaliatory conduct violations were issued for the actual violation of a prison rule," a plaintiff's

---

[17] As diligent as White has been about using the prison's grievance procedures, it does not appear that White availed himself of the grievance process to resolve the alleged coercion.

retaliation claim fails). Accordingly, defendants are entitled to summary judgment on this claim.

**C. White has not demonstrated that defendants retaliated against him when they transferred him to different housing units.**

White alleges that on two separate occasions defendants transferred him to a different housing unit for impermissible purposes. Docket 29 at 10, 14–15. Because the first transfer occurred after White had filed grievances against Officers Benac and Jackson, and because the second transfer occurred shortly after White had talked with Associate Warden Stanwick about filing a harassment claim against prison staff, White asserts that both transfers constitute retaliatory discipline. *Id.*

As defendants point out, prison officials may "transfer a prisoner for whatever reason or for no reason at all," *Olim v. Wakinekona*, 461 U.S. 238, 250 (1983), so long as the transfer is not "in retaliation for the exercise of a constitutional right." *Goff*, 7 F.3d at 737. To prevail on a retaliatory transfer claim, therefore, an inmate must show that the transfer would not have occurred *but for* the inmate's constitutionally protected conduct. *Orebaugh*, 910 F.2d at 529 (emphasis added). "Finding that an impermissible retaliatory motive was a *factor* is insufficient to establish a claim in a prisoner retaliatory transfer case." *Goff*, 7 F.3d at 738 (citing *Ponchik v. Bogan*, 929 F.2d 419, 420 (8th Cir. 1991)).

In the instant case, White has failed to establish that his participation in the grievance process was the motivating factor for each transfer. Defendants, on the other hand, have presented "some evidence" to show that White was transferred for good cause. Docket 134 at 17. More specifically, defendants assert that White was transferred for repeatedly violating Rule 4-3, which prohibits consensual sexual contact.[18] *Id.* To fulfill their duty "to protect inmates from sexual assault under the Prison Rape Elimination Act," defendants presumably transferred White to avoid additional Rule 4-3 violations between White and Dalrymple. Docket 134 at 17. Because White has not demonstrated that an impermissible retaliatory motive was the motivating factor for his transfers, the court finds that defendants are entitled to summary judgment on White's retaliatory transfer claims.

**D.    Plaintiffs have not demonstrated that defendants retaliated against them when they issued write-ups related to plaintiffs' transfer and possession of legal documents.**

Plaintiffs allege that defendants engaged in retaliatory discipline when they filed disciplinary reports on Dalrymple and White for violations of Rule 3-15 and Rule 3-21, respectively. Docket 29 at 15–16. Plaintiffs appear to allege that the disciplinary reports were issued in retaliation for plaintiffs' attempt to

---

[18] In addition to the previously discussed Rule 4-3 violation, which occurred on December 10, 2011, Dalrymple and White admitted to engaging in consensual sexual contact with each other on October 24, 2011. *See* Docket 120-10; Docket 120-11; Docket 131 (Shryvers Aff. ¶¶ 4–9).

access the courts. *Id.* Defendants contest this claim with evidence that plaintiffs were disciplined for actual rule violations. Docket 120-14; Docket 120-15. In their response to defendants' motion for summary judgment, plaintiffs do not contest the fact that each of them committed the alleged rule violations–Dalrymple had in his possession a document that had White's name on it, and White had given Dalrymple that document. Docket 155 at ¶¶ 42–54. Nonetheless, plaintiffs assert that those rules should not apply to their case since they have filed a joint complaint. Docket 155 at ¶ 42.

The court finds that plaintiffs have failed to establish that their participation in a constitutionally protected activity was the motivation for the disciplinary measures in question. Defendants, on the other hand, have provided "some evidence" that the disciplinary measures were the consequences of actual rule violations. Docket 134 at 11–13. "On February 8, 2012, at approximately 7:58 A.M., [Unit Manager Tammy Doyle] observed Inmate White give a piece of paper to Inmate Dalrymple." Docket 124 (Doyle Aff. ¶ 4). Doyle "approached Inmate Dalrymple and confiscated[19] the paper,"

---

[19] As plaintiffs have repeatedly stressed, Doyle confiscated a number of additional legal documents after this incident. "Based on articulable suspicions that Inmate Dalrymple was in possession of legal documents and grievances belonging to Inmate White, [Doyle] authorized and ordered a shake-down of the three bunks in Inmate Dalrymple's living area." Docket 124 (Doyle Aff. ¶ 9). "This shake down was also authorized by Associate Warden Stanwick." *Id.* "This shake-down produced legal documents with Inmate White's name, both Inmate White's and Dalrymple's names, and the names of other inmates." *Id.* at ¶ 10. "All paperwork with Inmate Dalrymple's name was returned to him; all

which "was a legal document with Inmate White's signature on it." *Id.* Doyle then completed disciplinary reports for each of the plaintiffs, charging Dalrymple with a violation of Rule 3-15, which prohibits an inmate from possessing "any article not issued to" the inmate,[20] (*id.* at ¶¶ 5–6; Docket 120-3 at 5; Docket 120-14), and charging White with a violation of Rule 3-21, which prohibits an inmate from "transferring money or property to . . . another inmate" (Docket 124 (Doyle Aff. ¶¶ 5, 7); Docket 120-3 at 5; Docket 120-15).

Again, plaintiffs do not contest that defendant Doyle observed White giving a paper to Dalrymple. Regardless of what exceptions plaintiffs believe should be made to Rules 3-15 and 3-21, their conduct constituted a violation of prison policy, and the court must grant "wide-ranging deference" to the policies enacted by the DOC. *Bell*, 441 U.S. at 547 (citations omitted). The court therefore concludes that defendants have provided "some evidence" that plaintiffs were issued disciplinary write-ups for actual rule violations, and defendants are entitled to summary judgment on these claims.

---

paperwork bearing the name of someone else was returned to its appropriate possessor." *Id.* "No paperwork was destroyed." *Id.*

[20] Additionally, pursuant to MDSP Operational Memorandum 3.3.C.3, inmates are prohibited from "possess[ing] legal documents or materials that belong to another inmate." Docket 124 (Doyle Aff. ¶ 8); Docket 120-8. "If an inmate is found to be in possession of another inmate's legal documents and materials, disciplinary action may be taken." Docket 120-8.

### E. White has not demonstrated that defendants retaliated against him when they issued him write-ups for being outside his designated area.

White alleges that he received two unfounded write-ups for being outside his designated area within MDSP, which is a violation of Rule 3-13. Docket 29 at 10–12; Docket 120-3 at 4. Although White does not specify why he believes he received false write-ups, the court has interpreted White's allegations as constituting claims for retaliatory discipline. Docket 9 at 5–9. Defendants deny White's allegation and assert that White was disciplined for actual rule violations. Docket 134 at 9–10. In his response to defendants' motion for summary judgment, White concedes that although he has previously received accurate write-ups for being "out of area," the write-ups in question were "not warranted." Docket 155 at ¶¶ 38–39.

The court finds that White has failed to identify evidence that proves the required elements of a retaliatory discipline claim. Not only has White failed to specifically show that he was engaged in a constitutionally protected activity, but White has also failed to show that his participation in a constitutionally protected activity was the motivation for these allegedly false write-ups. Docket 29 at 10–12. White merely asserts that the write-ups were false. *Id.* On the other hand, although defendants have failed to produce a disciplinary report evidencing White's out-of-area violations, White has conceded that a disciplinary hearing was held for each of the out-of-area write-ups and that he

was found guilty by a disciplinary officer. *Id.* Thus, there is "some evidence" that White was disciplined for an actual rule violation. *See Bandy-Bey*, 578 F.3d at 766 (" '[A] report from a correctional officer, even if disputed by the inmate and supported by no other evidence, legally suffices as 'some evidence' upon which to base a prison disciplinary violation, if the violation is found by an impartial decisionmaker.' " (quoting *Hartsfield*, 511 F.3d at 831)). Accordingly, defendants are entitled to summary judgment on these claims.

## F. White has not demonstrated that defendants Jackson and Tjeerdsma retaliated against him when they issued him write-ups.

White generally alleges that defendants Jackson and Tjeerdsma issued write-ups against White after he had requested and filed separate grievance forms against Jackson and Tjeerdsma. Docket 29 at 13–14. White alleges that shortly after he submitted the grievances, defendants took White to disciplinary segregation on a major write-up prepared by Tjeerdsma. Docket 29 at 14. White further alleges that he received a minor write-up from Jackson. *Id.* White does not, however, indicate what either write-up involved.

Here, White has failed to establish the second and third elements of a retaliatory discipline claim. Without any evidence of the write-ups to which White is referring, the assertion that defendants Jackson and Tjeerdsma disciplined White is nothing more than a mere allegation. *See Forrest*, 285 F.3d 688, 691 (noting that a nonmoving party may not "rest upon mere

denials or allegations"). Because there is no evidence that Jackson and Tjeerdsma took disciplinary action against White, there is similarly no evidence that the alleged disciplinary actions were taken in retaliation for White's participation in the grievance process. Therefore, defendants are entitled to summary judgment on this claim.

**G.    Plaintiffs have not demonstrated that defendants retaliated against them when they denied plaintiffs access to grievance forms.**

Plaintiffs allege that they were denied grievance forms in retaliation for the number of grievances each of them had previously filed. Docket 29 at 19–20. Defendants, on the other hand, assert that plaintiffs were denied grievance forms because plaintiffs had been abusing the administrative process. Docket 134 at 13. In their response to defendants' motion for summary judgment, plaintiffs claim that they did not file multiple claims on the same issue and "never refused to discuss their issues with their designated unit staff." Docket 155 at ¶¶ 64–66.

The court finds that plaintiffs have failed to establish that their participation in a constitutionally protected activity was the motivation for the denial of grievance forms. Defendants, on the other hand, have provided "some evidence" that the disciplinary measures were the consequences of actual rule violations. Docket 134 at 13–14; Docket 97 (Stanwick Aff. ¶ 10). Defendants' evidence establishes that White submitted at least ten grievances in a three-

week period, and Dalrymple submitted at least twenty grievances in a seven-week period. *See* Docket 97-1–97-5. Several of those grievances raised the same issues,[21] and as White has acknowledged, filing excessive grievances on the same issues is an abuse of the administrative process. Docket 133-1 (White Dep. 46:8–14). Based on this evidence, the court finds that plaintiffs were denied grievance forms for abusing the administrative process. Plaintiffs cannot, therefore, establish that their mere participation in a constitutionally protected activity was the motivation for the denial of grievance forms. Accordingly, defendants are entitled to summary judgment on these claims.

## CONCLUSION

Because Dalrymple and White have not shown that defendants denied them access to the courts or engaged in retaliatory discipline, defendants are entitled to summary judgment. Accordingly, it is

---

[21] For example, White submitted an Informal Resolution Request (IRR) on January 24, 2012, to report that Unit Coordinator Klimec had denied him grievance forms. Docket 97-5. That same day, White submitted a kite request in which he complained of the same issue. *Id.* As for Dalrymple, he filed an IRR on February 8, 2012, to report that Doyle had confiscated a grievance form from Dalrymple. Docket 97-5. That same day, Dalrymple filed another IRR to report that Doyle had confiscated legal documents. *Id.* Then, on February 9, 2012, Dalrymple submitted an IRR to again report that documents had been confiscated. And on February 10, 2012, Dalrymple filed an additional IRR to report that Doyle had given improper orders to have Dalrymple's legal documents confiscated. *Id.* Finally, on February 21, 2012, Dalrymple filed an IRR to report that documents had been confiscated and not returned. *Id.*

ORDERED that defendants' motion for summary judgment (Docket 120) is granted.

IT IS FURTHER ORDERED that plaintiffs' motion for preliminary injunction (Docket 85), motions for protective order (Docket 108, 109), motion for leave for interrogatories (Docket 136), and motions to compel (Docket 140–151) are denied as moot.

Dated November 14, 2012.

BY THE COURT:

/s/ *Karen E. Schreier*
KAREN E. SCHREIER
CHIEF JUDGE